Christopher N. Manning (pro hac vice)
Edward C. Reddington (pro hac vice)
Juli Ann Lund (pro hac vice)
Tracey A. Fung (pro hac vice)
David Berman (pro hac vice)
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:   (202) 434-5000
Facsimile:   (202) 434-5029
cmanning@wc.com
ereddington@wc.com
jlund@wc.com
tfung@wc.com
dberman@wc.com

L. Eric Dowell (AZ Bar No. 011458)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:   (602) 778-3700
Facsimile:   (602) 778-3750
eric.dowell@ogletreedeakins.com

*Attorneys for Defendant MD Helicopters, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PHILIP A. MARSTELLER and RUTH MARSTELLER,<br><br>Plaintiffs,<br><br>v.<br><br>MD HELICOPTERS, INC.,<br><br>Defendant. | Case No. CV-14-01788-PHX-DLR<br><br>**DEFENDANT MD HELICOPTERS, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES .....................................................................................ii

ARGUMENT ............................................................................................................1

I.     Plaintiff's Retaliation Claims (Counts 1 and 2) Fail as a Matter of Law. ........1

     A.     Plaintiff's Claims Fail for Lack of But-For Causation...........................1

     B.     Plaintiff Fails To Identify Evidence of Tilton's Knowledge.................4

     C.     Plaintiff Was Not Engaged in Protected Conduct.................................5

           1.     Plaintiff Acted Unlawfully.........................................................6

           2.     Plaintiff's Activity Was Not Reasonably Linked to a False Claim..........8

II.    Plaintiff Failed To Exhaust His § 2409 Claim...................................................10

III.   Plaintiff's Damages Claim Is Limited by the After-Acquired Evidence Doctrine.......11

     A.     The Doctrine Is Routinely Applied in FCA Retaliation Cases. ..........11

     B.     There Is No Genuine Dispute MDHI Has Established This Defense............13

     C.     Any Recovery Should Be Cut Off By December 31, 2014, and No Later Than March 9, 2015. ...........................................................................17

IV.   MDHI Is Entitled to Summary Judgment as to Liability on Counterclaims 1, 7, 8. ...17

     A.     Plaintiff's Liability for Breach of Contract........................................17

     B.     Plaintiff's Liability for Misappropriation of Trade Secrets................19

     C.     Plaintiff's Liability for Tortious Interference.......................................20

V.    Ruth Marsteller Does Not Have Independent Claims Against MDHI. ........20

CONCLUSION .......................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ameristar Airways, Inc. v. Admin. Review Bd., U.S. Dept. of Labor*, 650 F.3d 562 (5th Cir. 2011) ............................................................................................................ 12

*Brazill v. Cal. Northstate College of Pharmacy, LLC*, 949 F. Supp. 2d 1011 (E.D. Cal. 2013) ............................................................................................................... 4, 5

*Cross v. Samper,* 501 F. Supp. 2d 59 (D.D.C. 2007) ............................................. 12

*Deltek, Inc. v. Dept. of Labor, Admin. Review Bd.*, 649 Fed. Appx. 320 (4th Cir. 2016) .................... 12

*Drottz v. Park Electrochem. Corp.*, 2013 WL 6157858 (D. Ariz. Nov. 25, 2013) ............................. 2, 3

*F.T.C. v. Publ'g. Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) ............................................ 20

*Food Servs. of Am., Inc. v. Carrington*, 2013 WL 4507593 (D. Ariz. Aug. 23, 2013) ........................... 20

*Foster v. Metro. Life Ins. Co.*, 243 Fed. App'x 208 (9th Cir. 2007) ........................................ 16

*Gallagher v. San Diego Unified Port Dist.*, 668 F. App'x 786 (9th Cir. 2016) ............................... 3

*George v. Edholm*, 752 F.3d 1206 (9th Cir. 2014) ............................................................. 6

*Glynn v. EDO Corp.*, 2010 WL 3294347 (D. Md. Aug. 20, 2010) ............................................... 7

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ........................................................ 2

*Hamilton v. Yavapai Cmty. Coll. Dist.*, 2014 WL 11515631 (D. Ariz. Sept. 9, 2014) ........................ 12

*In re Jensen*, 995 F.2d 925 (9th Cir. 1993) ................................................................. 18

*Indiana Mich. Power Co. v. U.S. Dept. of Labor*, 278 Fed. App'x 597 (6th Cir. 2008) ....................... 12

*Isom v. JDA Software Inc.*, 2015 WL 3953852 (D. Ariz. June 29, 2015) ....................................... 2

*Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.*, 2014 WL 4259485 (D. Ariz. Aug. 28, 2014) ................... 19

*Kakeh v. United Planning Org., Inc.,* 655 F. Supp. 2d 107 (D.D.C. 2009) .................................... 12

*Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996) .................................................. 9, 16

*McCurdy v. Cowley Cty. Dev. Servs., Inc.*, 2014 WL 298680 (D. Kan. Jan. 28, 2014) ......................... 12

*McKennon v. Nashville Banner Publ'g. Co.*, 513 U.S. 352 (1995) .......................................... 12, 13

*Moore v. Gilead Scis., Inc.*, 2012 WL 1192075 (N.D. Cal. Apr. 10, 2012) ...........................12

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) ...........................2, 4

*O'Day v. McDonnel Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir. 1996) ......................13,14

*Shaninga v. St. Luke's Med. Ctr. LP*, 2016 WL 1408289 (D. Ariz. Apr. 11, 2016) ............2

*Sicilia v. Boeing Co.*, 775 F. Supp. 2d 1243 (W.D. Wash. 2011) ....................................9

*T.B. v. San Diego U.S.D.*, 806 F.3d 451 (9th Cir. 2015) ................................................3

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 2009 WL 1457036 (D. Ariz. May 21, 2009) ..................................................................................................7, 19

*U.S. ex rel. King v. Solvay Pharma., Inc.*, 871 F.3d 318 (5th Cir. 2017) ......................3

*U.S. v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y 2017) ....................................................7

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ..................................................................................................5, 18, 20

*United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996) ......................9, 10

*United States v. Ziegler*, 474 F.3d 1183 (9th Cir. 2007) .............................................6

*University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013) ..........2, 3

*Van Asdale v. Intl. Game Tech.*, 2009 WL 4828708 (D. Nev. Dec. 8, 2009) ...............15, 16

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ............................3, 5

*Yeary v. Florida Department of Corrections*, 1997 WL 284648 (M.D. Fla. May 13, 1997) ..............................................................................................................17

## STATE CASES

*Covid, Inc. v. Misencik*, 2014 WL 1056794 (Ariz. Ct. App. Mar. 18, 2014) ...................19

*Phelps v. Gilbraith*, 2010 WL 4323667 (Ariz. Ct. App. Oct. 29, 2010) .........................19

## OTHER AUTHORITIES

U.S. Const., Amend. 4......................................................................................6, 7

10 U.S.C. § 2409 .........................................................................................10, 11

31 U.S.C. § 3730(h) ...............................................................................2, 5, 7, 8

A.R.S. § 12-341.01 .........................................................................................19

To succeed on his retaliation claims, Plaintiff must establish that (1) he engaged in lawful acts constituting protected activity; (2) the relevant decisionmaker knew of his activity; and (3) his activity was the cause of the alleged retaliation.  Plaintiff cannot make any of these showings.  The record evidence and settled law preclude them.  Plaintiff instead resorts to impermissible speculation to argue that "central questions at the heart" of his claims (such as whether MDHI CEO Lynn Tilton knew of his allegedly protected activity and "possessed a retaliatory motive") are disputed.  Opp. 1.  But, the material <u>facts</u> on these issues are not disputed, and controlling law renders Plaintiff's speculation immaterial.  Accordingly, MDHI is entitled to summary judgment on Plaintiff's claims.  Plaintiff also fails to present a genuine dispute as to the after-acquired evidence doctrine or his liability on the three Counterclaims at issue.  For these reasons, summary judgment is appropriate on these issues as well.

## ARGUMENT

I.     **Plaintiff's Retaliation Claims (Counts 1 and 2) Fail as a Matter of Law.[1]**

A.     **Plaintiff's Claims Fail for Lack of But-For Causation.**

Plaintiff attempts to rewrite the record to create an issue of fact as to an allegedly retaliatory motive, but his arguments fail as a matter of fact and law.  The uncontested evidence proves that, in the evening of August 22 or early morning of August 23, 2013, Tilton told MDHI's president Carl Schopfer to fire Plaintiff because of his improper disclosure to MDHI's CFO that MDHI was interviewing potential replacements.  DSOF ¶¶ 89-91.  This simple and unrebutted fact is fatal to Plaintiff's claims, as it precludes the mandatory showing of but-for causation.

In an effort to sidestep this fact, Plaintiff claims that Schopfer's testimony about when he spoke to MDHI's <u>HR director</u>, Suzanne Strickland, about Plaintiff's termination (in the afternoon of August 23, 2013) conflicts with Schopfer's testimony about when MDHI's <u>CEO</u>, Tilton, instructed him to terminate Plaintiff (during the evening of August 22, or morning of August 23, 2013).  Opp. 8-9.  It does not.  Plaintiff's professed "conflict" rests on a mischaracterization of

---

[1] Plaintiff did not separately address MDHI's substantive arguments as to Count 2, nor dispute that the FCA and DCWPA are construed *in pari materia*.  MDHI thus does not reiterate its DCWPA arguments here; the DCWPA's exhaustion requirement is discussed *infra* in Section II.

Schopfer's testimony.  According to Plaintiff, "Schopfer testified that, after learning that Tilton wanted to fire Marsteller, he would have <u>promptly</u> gone to Human Resources, Suzanne Strickland."  Opp. 8-9 (emphasis added).  But, in reality, Schopfer testified, "I don't recall specifically how my day went, but obviously I met <u>at some point</u> with Suzanne Strickland to inform her of the—of the plan."  PX14 at 112:8-12 (emphasis added).[2]

Plaintiff also contends that "[t]he dramatic timing of his termination is itself sufficient to defeat summary judgment."  Opp. 8.  But, Plaintiff's argument rests on cases that are not good law after *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), as this District has repeatedly recognized.  *See, e.g.*, *Shaninga v. St. Luke's Med. Ctr. LP*, 2016 WL 1408289, *11 (D. Ariz. Apr. 11, 2016) (holding, post-*Nassar*, that "it takes more than allegations of knowledge and temporal proximity to demonstrate but-for causation"); *Drottz v. Park Electrochem. Corp.*, 2013 WL 6157858, *14-15 (D. Ariz. Nov. 25, 2013) (rejecting knowledge and proximity in time as sufficient to establish a *prima facie* case of causation post-*Nassar*); *Isom v. JDA Software Inc.*, 2015 WL 3953852, *12 (D. Ariz. June 29, 2015) (citing *Drottz* for the proposition that, "[p]ost-*Nassar*, the Court has held that proximity in time combined with knowledge of the protected activity is insufficient for the Court to 'find a disputed issue of fact on causation'").

Plaintiff concedes that "imposition of a but-for causation requirement turns on the language of the particular statute at issue."  Opp. 9.  As MDHI explained, *Nassar* represents the most recent in a series of cases in which the Supreme Court has held that the use of the phrase "because of" in anti-retaliation statutes requires proof of but-for causation.  Mot. 13-14; *see Nassar*, 133 S. Ct. at 2527 (Title VII); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (ADEA); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977) (Section 1983).  The FCA prohibits retaliation "because of" protected activity.  31 U.S.C. § 3730(h).  While the Ninth Circuit has not yet had occasion to do so, the Fifth Circuit has held that *Nassar*'s logic

---

[2] Plaintiff attempts to undermine this undisputed testimony by pointing to varying recollections, years later, as to whether Tilton instructed Kitchen to terminate him in early August 2013.  Opp. 8.  But, Kitchen testified that he "wasn't surprised" Plaintiff was fired on August 23, because "the whole [CFO] thing" had "all escalated" when the CFO abruptly quit on August 21.  PX8 at 119:25-120:24.  Plaintiff's assertions concerning events in early August 2013 do not create a material dispute of fact as to the events of August 22-23, 2013.

compels its application to FCA claims:  "The FCA prohibits adverse employment action taken 'because of' protected activity relating to an FCA suit.  Therefore, to survive summary judgment, Relators must point to evidence creating a genuine issue of material fact that their complaints were the but-for cause of their terminations."  *U.S. ex rel. King v. Solvay Pharma., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017) (citing *Nassar*).  The Ninth Circuit has extended *Nassar* to the ADA based on the presence of "because of" in the operative language.  *T.B. v. San Diego U.S.D.*, 806 F.3d 451, 473 (9th Cir. 2015).  In the face of this authority, Plaintiff's reliance on *Hopper*, Opp. 9, which was decided more than a decade <u>before</u> *Nassar*, is fatally misplaced.

Plaintiff also misapprehends the nature of the but-for causation test.  As MDHI explained, there can be more than one motivation for a termination, but "if the employer would have terminated the employee anyway for a non-retaliatory reason, the employee's claim fails for lack of causation."  Mot. 13.  This is how the Supreme Court, the Ninth Circuit, and this Court have all articulated the test.  *Nassar*, 133 S. Ct. at 2533 ("This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."); *Gallagher v. San Diego Unified Port Dist.*, 668 F. App'x 786, 786-87(9th Cir. 2016) ("The district court also correctly ruled that Gallagher's evidence does not show that retaliation was <u>the</u> cause of the non-renewal of his anchorage permit, as the but-for test requires.") (emphasis in original); *Drotz*, 2013 WL 6157858, *14 ("Plaintiff must show that she would not have been terminated but-for her complaints[.]").[3]  This is also the same standard Plaintiff cites:  "but for such activity [he] would not have been fired."  Opp. 10 (quoting *Villiarimo*, 281 F.3d at 1064-65).

The record evidence establishes that Tilton instructed Schopfer no later than the morning of August 23, 2013—<u>before</u> MDHI received the DOJ letter—to terminate Plaintiff that day.  DSOF ¶¶ 93-95.  As a result, Plaintiff cannot show that "but for" his allegedly protected activity "[he] would not have been fired."  This simple fact precludes the necessary proof of but-for

---

[3] Contrary to Plaintiff's suggestion, Opp. 9, MDHI does not contend that but-for causation requires retaliation "be the 'sole' or 'only' cause." Rather, under the but-for causation standard, "an action is not regarded as a cause of an event if the particular event would have occurred without it," Mot. 13 (quoting *Nassar*), Thus, "courts reject FCA retaliation claims where a retaliatory motive, even if present, is not the sole cause of the complained-of action." Mot. 14.

1    causation, even if Plaintiff could establish that the subsequent receipt of the DOJ letter created

2    an additional, retaliatory motive for his termination.  *Mt. Healthy*, 429 U.S. at 285-86.

3         **B.    Plaintiff Fails To Identify Evidence of Tilton's Knowledge.**

4         It is undisputed that Tilton alone decided to terminate Plaintiff's employment.  DSOF

5    ¶ 93; PSOF ¶ 53.  Plaintiff has identified no evidence that he, or anyone else, informed Tilton of

6    his allegations of "fraud" before his termination.  This, too, is fatal to Plaintiff's retaliation claims.

7         In response to this undisputed fact, Plaintiff points to the alleged knowledge of Tilton's

8    "direct reports": Schopfer, Ruppert, and Whalen (the latter of whom was not even an MDHI

9    employee).  Opp. 6-7.  But neither case cited by Plaintiff addresses the situation here:  where

10   notice of the allegedly protected activity was provided to someone who was <u>not</u> the

11   decisionmaker.

12        By contrast, the *Brazill* case, cited in MDHI's opening brief, directly addresses this

13   situation.  *Brazill v. Cal. Northstate College of Pharmacy, LLC*, 949 F. Supp. 2d 1011, 1024 (E.D. Cal.

14   2013).  There, the court granted summary judgment, finding there was "no evidence from which

15   a trier of fact could find that plaintiff's alleged protected activity played any role in the decision

16   to terminate him" because "[t]he undisputed evidence is that plaintiff never addressed his

17   concerns about the tuition scheme to President Cheung," "the person with the decision-making

18   power over whether plaintiff kept his position."  *Id.* Instead, as here, the reports were made only

19   to a subordinate, and "there is no evidence to oppose President Cheung's testimony that when

20   he terminated plaintiff he did not know about plaintiff's reports to Dean Hawkins."  *Id.*  Despite

21   *Brazill* presenting the <u>identical</u> factual predicate, Plaintiff makes no effort to distinguish this

22   dispositive issue—the decisionmaker's lack of knowledge—and instead simply asserts *Brazill* is

23   "of little persuasive application" because it involved "a far longer temporal proximity" between

24   the adverse action and the protected activity.  Opp. 9 n.3.  But, *Brazill* did not reject the plaintiff's

25   claim based on a purported insufficiency of temporal proximity.  To the contrary, while the court

26   discussed temporal proximity, it expressly rejected the plaintiff's claim based on failure to prove

27   knowledge.  949 F. Supp. 2d at 1024.  Thus, *Brazill* is directly on point.

28        *Brazill* is instructive in another regard:  there, the plaintiff opposed summary judgment by

- 4 -

asserting that the decisionmaker's "lack of knowledge is 'implausible.'"  *Id.*  *Brazill* rejected that contention, finding it rested on speculation, not evidence.  *Id.*  Here, Plaintiff similarly contends that "[i]t is a fair and reasonable inference that Ruppert, Schopfer, or Whalen would have conveyed Mr. Marsteller's complaints to Tilton," Opp. 7.  But, this speculation is not evidence and is barred by the same Ninth Circuit precedent relied on in *Brazill*:  "To survive summary judgment, a plaintiff must set forth <u>non-speculative evidence of specific facts</u>, not sweeping conclusory allegations."  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (emphasis added).  *Cafasso* likewise defeats Plaintiff's effort to characterize his speculation as an "inference":  "The evidence adduced by [plaintiff] establishes only that this set of events could <u>conceivably</u> have occurred; it does not give rise to a <u>reasonable</u> inference that it did in fact occur.  To find liability on this evidence would require undue speculation."  *Id.* (emphasis added); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) ("At summary judgment, this court need not draw <u>all</u> possible inferences in [plaintiff's] favor, but only all <u>reasonable</u> ones.").  Moreover, there is no evidence to support Plaintiff's speculation; the only evidence on the issue flatly contradicts it.  DSOF ¶ 94.

Plaintiff's attempt to bolster his speculation with Cherie Erickson's testimony about "yelling" she allegedly heard on August 23, 2013, also fails.  Opp. 8.  Even accepting Erickson's testimony as true, Erickson repeatedly testified that the "yelling" she claims to have heard occurred <u>after</u> Plaintiff was terminated.  *See* Dkt. 182-12 ¶¶ 3-4; Def.'s 56.1 Resp. ¶ 51.  In this regard, the record reflects that, while Plaintiff was being escorted from MDHI's premises after his termination, he exclaimed that MDHI was breaking the law, and these comments were reported to Tilton later that day.  DX12 (Tilton Dep.) at 106:3-108:23.  Thus, the undisputed evidence further confirms that Erickson's specific claim—that Tilton yelled that Plaintiff was "probably at the DOJ's office as we speak," Dkt. 182-12 ¶ 5; Opp. 8—is consistent with Tilton learning of Plaintiff's claims only <u>after</u> he was terminated.  Plaintiff's reliance on his own speculation to argue otherwise is precluded by *Cafasso*.

**C.    Plaintiff Was Not Engaged in Protected Conduct.**

To prove retaliation, Plaintiff must first show that he engaged in <u>lawful</u> acts in furtherance

of an FCA action.  31 U.S.C. § 3730(h).  Here, the record establishes that Plaintiff engaged in <u>unlawful</u>, unconstitutional acts as a *de facto* agent in support of an unbounded and unauthorized investigation, not acts in furtherance of an objectively and subjectively reasonable *qui tam* claim.  Because the FCA's anti-retaliation provision protects only lawful acts in furtherance of an FCA claim, MDHI is entitled to summary judgment.

### 1.    Plaintiff Acted Unlawfully.

Although Plaintiff disputes that he was a *de facto* agent, he does not dispute the essential facts that lead to that legal conclusion:  At the request and direction of Agent Stamper, and with Agent Stamper's acquiescence, Plaintiff engaged in quintessentially investigative activities, including surveilling Vergez and others, surreptitiously recording his co-workers, and smuggling out of MDHI documents and information to which Plaintiff did not have access in the ordinary scope of his employment.  DSOF ¶¶ 35-65; PSOF ¶¶ 20-21, 25, 29-31, 33.  Plaintiff contends that his actions as a *de facto* agent are irrelevant in the absence of cases applying that doctrine to the FCA, but the FCA does not—and cannot—trump the Constitution.  Actions in violation of the Fourth Amendment are unlawful, and therefore not protected, whether allegedly taken to advance an FCA claim, a government investigation, or for any other purpose.

Plaintiff's conduct included searching MDHI's property and seizing documents and information that Plaintiff and Agent Stamper hoped would be evidence of wrongdoing by MDHI, but was not.  Those searches and seizures were not authorized by a neutral magistrate, nor were they based on a particularized warrant.  Clearly established case law demonstrates such conduct is unlawful, whether carried out by a government agent like Agent Stamper, or a *de facto* agent like Plaintiff.  *See, e.g.*, *George v. Edholm*, 752 F.3d 1206, 1215 (9th Cir. 2014); *United States v. Ziegler*, 474 F.3d 1183, 1190 (9th Cir. 2007).  Plaintiff attempts to avoid the consequences of his illegal conduct by (1) incorrectly claiming that there are disputes of fact that might prevent summary judgment; (2) impermissibly attempting to shift the burden of proof as to the lawfulness of his conduct to MDHI; and (3) asserting that MDHI's defense contradicts the FCA's purpose.  Plaintiff's arguments fail as a matter of law.

<u>First</u>, the record demonstrates that Plaintiff acted as a *de facto* agent.  DSOF ¶¶ 36-65.

Indeed, before he reviewed MDHI's motion and realized the impact of his unlawful conduct, Plaintiff embraced his investigative activities on Agent Stamper's behalf, expressly relying on them in support of his own motion. PSOF ¶¶ 20-21, 25, 29-31, 33. The law is clear, however, that these undisputed actions rendered Plaintiff a *de facto* agent. Mot. 6-8.

Second, the law establishes that Plaintiff acted unlawfully. As a *de facto* agent, Plaintiff's investigative acts were subject to Fourth Amendment requirements. But Plaintiff admittedly conducted his searches and seizures without a warrant; indeed, it is undisputed that no warrant was ever issued related to MDHI. DSOF ¶¶ 59-60. Plaintiff also identifies a number of generally-recognized exceptions to the warrant requirement, but fails to identify any specific facts to establish that they excuse Plaintiff's unlawful search for and seizure of MDHI's documents. Opp. 15-16. Moreover, even when government agents act pursuant to a warrant, the scope of the search must still be particularized. *U.S. v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y 2017) (suppressing evidence obtained from insufficiently particularized search warrants). But here, Plaintiff engaged in an indiscriminate seizure that could never pass Fourth Amendment muster. DSOF ¶¶ 44-66. While courts have carved out narrow exceptions to the warrant requirement, none of them swallow the rule, which is precisely what Plaintiff's argument would do.

Finally, Plaintiff presents several legally unsupported arguments in an attempt to sidestep the effect of his unlawful actions as a *de facto* agent. Plaintiff initially argues that § 3730(h) protects unlawful conduct. The statute says otherwise: recourse is available only for "lawful acts." 30 U.S.C. § 3730(h). Moreover, courts routinely refuse to condone the acts of FCA relators who violate the law. Courts have permitted FCA defendants to bring counterclaims against relators, *see* Dkt. 478 at 15-16, and sanctioned relators for engaging in bad conduct in furtherance of their *qui tam* claims. *See, e.g.*, *Glynn v. EDO Corp.*, 2010 WL 3294347 (D. Md. Aug. 20, 2010). Courts also have dismissed FCA retaliation actions when relators' personal investigations did not relate to a false claim. *See, e.g.*, *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 2009 WL 1457036, at *11 (D. Ariz. May 21, 2009).[4]

---

[4] That a separate provision of the FCA permits a relator to share in a *qui tam* recovery even if the relator participated in the fraud, *see* Opp. 11-12, cannot salvage Plaintiff's retaliation claim.

Plaintiff also contends that not <u>all</u> of his activities were unlawful.  Opp. 13-14.  But this sleight of hand misses the mark.  After Plaintiff became a *de facto* agent, actions that he might otherwise have been able to take without implicating the Constitution no longer were outside such constraints.  Thus, it is of no moment whether Plaintiff could have permissibly engaged in certain activities had he not been a *de facto* agent; as his own admissions demonstrate, he engaged in them as a *de facto* agent, and thus, was constrained by the same limitations as any other government agent.  Nor can Plaintiff remove the taint of his unlawful acts by claiming that other acts were not unlawful.  Plaintiff relies on his overall course of conduct in assisting Agent Stamper, which in Plaintiff's telling led to the DOJ's preservation letter and, purportedly, his termination.  Opp. 14 n.6.  To hold in such a circumstance that Plaintiff's unlawful conduct is immunized by other conduct that does not violate the law would render § 3730(h)'s express limitation to "lawful" acts surplusage, in violation of settled canons of statutory construction:  If unlawful conduct can be discounted simply by identifying other portions of the same course of conduct that are not unlawful, then the limitation has no meaning.  Indeed, under Plaintiff's theory, even the example he proffers—of a relator engaging in breaking and entering—would be protected under § 3730(h) if the theft were part of a course of conduct that included other, purportedly lawful acts, such as taking materials "readily available to" the relator.  Opp. 14.  Such an outcome has no support in the law; § 3730(h) does not confer a license to act unlawfully.

## 2.    Plaintiff's Activity Was Not Reasonably Linked to a False Claim.

Even if Plaintiff had engaged in solely lawful conduct (a showing he did not and cannot make), his retaliation claim still would fail as to the required element of protected activity, because he has failed to identify evidence that would support a reasonable belief that MDHI submitted a false claim.  Plaintiff does not even attempt to satisfy that burden.  The phrase "false claim" <u>never</u> appears in his brief, except when he refers to the "False Claims Act."  Instead, Plaintiff repeatedly

---

Congress could reasonably balance the competing concerns at issue in the FCA by permitting a relator engaged in unlawful conduct to recover a bounty for a *qui tam* claim, while prohibiting that same relator from forcing a company to offer him backpay, or reinstate him, in the face of unlawful conduct.  While Plaintiff may disagree with that policy choice, the plain language of § 3730(h) demonstrates that that was, in fact, Congress's determination.

relies on vague allusions to "possible fraud." *See, e.g.*, Opp. 3-5.  But under the FCA, liability attaches "not to underlying fraudulent activity, but to the 'claim for payment.'"  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).

Because Plaintiff focuses on "fraud" writ large, which he interprets to mean any potentially wrongful activity, rather than—as the FCA requires—"an actual or potential false claim made against the U.S. Government," *Sicilia v. Boeing Co.*, 775 F. Supp. 2d 1243, 1250 (W.D. Wash. 2011), his asserted evidence fails to establish either the subjective or objective components of the protected activity inquiry.  As to the subjective component, Plaintiff points to the timing of his reports "about fraudulent pricing and MDHI's conflicted relationship with Vergez" in the "summer 2012." Opp. 4.  But the timing of the reports is irrelevant if they could not, even subjectively, have related to a false claim, and Plaintiff points to no evidence that, in "summer 2012" or at any other time, he had any basis to believe in good faith that his allegations related to a false claim to the government.  Plaintiff does not identify any source for his alleged belief that either federal law generally, or FMS contracts specifically, mandated MDHI's <u>lowest</u> price, rather than a commercially reasonable price.  Similarly, Plaintiff fails to identify any evidence that would support a good-faith belief that Vergez's post-government employment could result in a false claim by MDHI to the government.  The record evidence that Plaintiff had an alternative motive to press his allegations of "fraud" (driving down MDHI's price in advance of a planned attempt to purchase the company, DSOF ¶¶ 73-79) suggests why Plaintiff has failed to make the necessary showing, but the Court need not reach Plaintiff's half-baked factual arguments given his failure to make any showing as to the subjective component of the test.[5]

Plaintiff's response as to the objective component likewise fails to raise a question of fact as to the key issue:  whether he was "investigating matters which are calculated, or reasonably could lead, to a <u>viable</u> FCA action." *Hopper*, 91 F.3d at 1269 (emphasis added).  Although MDHI

---

[5] Plaintiff attempts to rebut the record evidence, as well as his own prior testimony, as to his motive by pointing to subsequent, self-serving testimony.  Opp. 4.  The Ninth Circuit has squarely rejected the sufficiency of such evidence to oppose summary judgment. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (concluding plaintiff's deposition testimony that "flatly contradicts" her prior sworn statements and record evidence "does not present 'a sufficient disagreement to require submission to a jury'").

1  expressly raised the lack of evidence on this issue—including Plaintiff's failure to read the relevant

2  contracts or to identify any way in which the alleged employment of Vergez by MDHI could

3  result in a false claim to the government, Mot. 9-12—Plaintiff's Opposition fails to respond with

4  the necessary evidence.  Instead, Plaintiff first attempts to establish this <u>objective</u> component of

5  the test through the <u>subjective</u> belief of "other MDHI employees."  Opp. 5.  Not surprisingly,

6  Plaintiff identifies no precedent supporting such a conflation of the subjective and objective

7  components.  Plaintiff then attempts to bolster this wholly subjective evidence with further

8  subjective evidence:  that various "agencies invested considerable resources to investigate and

9  prosecute Vergez and Epps."  *Id.*  But neither Vergez nor Epps was investigated or prosecuted

10  <u>under the FCA</u>; thus, Plaintiff's argument is simply a *non sequitur*.[6]

11  When Plaintiff finally turns to the record evidence underlying his activity, he jettisons his

12  allegations as to Vergez entirely and identifies only a single fact in support of his "fraudulent

13  pricing" claim:  "in the spring of 2012," the "baseline price" for the 530F "on the commercial

14  market" differed from the price MDHI bid for the SANG contract.  Opp. 5.  But Plaintiff fails

15  to point to any evidence that either federal law or the SANG contract required these to be the

16  same price, and, as MDHI detailed in its opening motion, there is no such evidence.  Mot. 9-10.

17  Indeed, this precise allegation appeared in Plaintiff's *qui tam* complaint, and it was rejected as

18  insufficient to state a viable FCA claim.  *See Qui Tam* Action, Dkt. 1, 77.  It therefore cannot

19  satisfy the objective component of the protected activity test.  *Hopper*, 91 F.3d at 1269.

20  ## II.   Plaintiff Failed To Exhaust His § 2409 Claim.

21  Plaintiff's defense of his failure to exhaust his § 2409 claim fails to address the critical

22

23  ────────────

24  [6] Ironically, given his reliance on the subjective views of various other individuals, Plaintiff objects
to MDHI's reference to "the government's declination decision," claiming MDHI improperly
treated it "as if it were a decision on the merits."  Opp. 6.  To the contrary, MDHI never suggested

25  that "the government's declination decision" was a decision on the merits; it instead stated,
correctly, that the court's dismissal of Plaintiff's *qui tam* claims was such a decision.  Mot. 10.

26  Although Plaintiff argues that he "need not ultimately succeed on a *qui tam* to prevail on his
retaliation claim," Opp. 6, none of the cases he cites involve claims rejected as a matter of law,

27  much less hold that such allegations may nonetheless satisfy the objective component of the
protected activity test.  Ninth Circuit precedent directly refutes that notion.  *Hopper*, 91 F.3d at

28  1269 (finding that judgment "should have been granted as a matter of law" as to retaliation claim
where plaintiff's "FCA allegations were not sufficient to pass summary judgment muster").

record evidence:  his decision to "refile" his DODIG complaint, rather than file a court action, thereby reinstating the mandatory exhaustion requirement.  DX39; DSOF ¶¶ 132-134.

As MDHI explained, and Plaintiff does not dispute, there are only two ways for a plaintiff to exhaust remedies, thereby permitting suit:  (a) the issuance of "an order denying relief," or (b) the failure to issue such an order within 210 days after the submission of the complaint to the DODIG.  10 U.S.C. § 2409; *see generally* Mot. 15-16.  Plaintiff contends that he exhausted his remedies as to his October 18, 2013 complaint because he "waited for more than 210 days before filing his reprisal claim in federal court."  Opp. 18.[7]  But, Plaintiff's own statements and actions indicate that, rather than bring the court action, Plaintiff instead chose to "refile" his claims, under a new DODIG case number, in December 2014, thereby initiating a new DODIG investigation—and his statutory duty to await the results.  DX39; DSOF ¶¶ 132-135.

Plaintiff attempts to minimize the import of his choice in this regard, but § 2409 is clear that, once a complaint is filed, the complainant <u>must</u> await either the results of the DODIG's investigation or the passage of 210 days without any result.  10 U.S.C. § 2409(c)(2).  Whether Plaintiff could have filed a claim in court pursuant to his first complaint as of December 18, 2013, is irrelevant, because he chose instead to resubmit his allegations to the DODIG to investigate.  DX39.  Having done so, the statute did not permit Plaintiff to revoke that decision before one of the two designated statutory outcomes occurred.  But Plaintiff admits that is what he did here:  "submitting and withdrawing a second DODIG complaint," Opp. 18, in the midst of the DODIG's investigation, before either the issuance of a final order or the passage of 210 days.  Pl.'s 56.1 Resp. ¶¶ 135-136.  Nothing in the statute authorizes that premature withdrawal of claims; accordingly, Plaintiff's current reprisal claim is barred for failure to exhaust.

### III.   Plaintiff's Damages Claim Is Limited by the After-Acquired Evidence Doctrine.

#### A.   The Doctrine Is Routinely Applied in FCA Retaliation Cases.

Although he protests its application here, Plaintiff fails to identify a <u>single</u> case barring the

---

[7] Plaintiff wrongly suggests that he could have received an "'order denying relief' under § 2409(c)(2)."  Opp. 18.  The "order denying relief" must come from "the head of the agency," which is defined to mean only Secretary-level positions.  10 U.S.C. §§ 2409(c)(1), (g)(2).

after-acquired evidence defense in the FCA context (or any other). In fact, the after-acquired evidence defense is routinely applied in FCA retaliation cases. *See, e.g., Moore v. Gilead Scis., Inc.*, 2012 WL 1192075, at *7-10 (N.D. Cal. Apr. 10, 2012) (granting partial summary judgment to employer on defense); *Hamilton v. Yavapai Cmty. Coll. Dist.*, 2014 WL 11515631, at *13 (D. Ariz. Sept. 9, 2014) (denying motion to strike defense); *McCurdy v. Cowley Cty. Dev. Servs.*, Inc., 2014 WL 298680, at *2 (D. Kan. Jan. 28, 2014) (permitting defense at trial). Even the sole case cited by Plaintiff, *Kakeh v. United Planning Organization, Inc.*, does not support his argument, as the court gave an after-acquired evidence instruction on back pay. *See* 655 F. Supp. 2d 107, 123 n.11 (D.D.C. 2009).[8] Similarly, while Plaintiff argues the Court should disregard *Moore* because the plaintiff there asserted both FCA retaliation and disability discrimination claims, *Moore* is directly on point: the court expressly applied the after-acquired evidence analysis to both "this False Claims Act and disability discrimination context" and granted summary judgment to the employer. *Moore*, 2012 WL 1192075, at *9-10.

Plaintiff also contends there is a "difference in the remedial schemes" of the FCA and the ADEA, such that the after-acquired evidence doctrine "cannot be imported from employment discrimination cases to the FCA." Opp. 19. Plaintiff does not cite a single case in support of this proposition, which is refuted both by (1) squarely relevant FCA authority, as discussed above, and (2) the widespread application of the doctrine outside the employment discrimination context, including to other whistleblower protection statutes such as the Sarbanes-Oxley Act, the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR21), and the Energy Reorganization Act. *See Deltek, Inc. v. Dept. of Labor, Admin. Review Bd.*, 649 Fed. Appx. 320, 331 (4th Cir. 2016) (affirming ALJ's application of *McKennon* to Sarbanes-Oxley retaliation claim); *Ameristar Airways, Inc. v. Admin. Review Bd., U.S. Dept. of Labor*, 650 F.3d 562, 570 (5th Cir. 2011) (remanding whistleblower retaliation claim under AIR21 for application of after-acquired

---

[8] The defendant in *Kakeh* claimed the court erred by not including noneconomic emotional distress damages (which the court referred to as compensatory damages) within the defense; the court did not resolve that issue. *See* 655 F. Supp. 2d at 123 n.11; Case No. 1:05-cv-01271-GK, Dkt. 178-1 at 43 (compensatory damage award was for emotional distress). Other courts have held that the doctrine applies to compensatory damages as well as back pay and reinstatement/front pay. *See, e.g., Cross v. Samper*, 501 F. Supp. 2d 59, 63-65 (D.D.C. 2007).

evidence defense under *McKennon*); *Indiana Mich. Power Co. v. U.S. Dept. of Labor*, 278 Fed. App'x 597, 606 (6th Cir. 2008) (applying *McKennon* to whistleblower retaliation claim under the Energy Reorganization Act).  Notably, each of these statutes uses the mandatory "shall"—the same language Plaintiff contends prohibits application of the doctrine here.

Application of the doctrine to the FCA and other whistleblower statutes is consistent with *McKennon*, as the same considerations the Supreme Court recognized there, in connection with the ADEA, apply equally to anti-retaliation statutes.  While such statutes seek to protect employees based on certain conduct or characteristics, as the Supreme Court noted, that statutory protection "does not constrain employers from exercising significant other prerogatives and discretions in the course of . . . discharging of their employees."  *McKennon v. Nashville Banner Publ'g. Co.*, 513 U.S. 352, 361.  Given this discretion as to non-protected factors, "[i]t would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds."  *Id.* at 362.  Ultimately, like the ADEA, the object of the FCA and similar provisions is to make a wrongfully terminated employee whole, but not to "require the employer to ignore" after-acquired evidence that would have been independent, lawful grounds for termination.  *Id.*   Plaintiff offers no reason for the Court to reject the unanimous authority on this issue.

### B.     There Is No Genuine Dispute MDHI Has Established This Defense.

Plaintiff's substantive arguments as to the after-acquired evidence defense are similarly misplaced; none raise a genuine dispute that would preclude summary judgment here.  Critically, Plaintiff does not dispute—nor could he—that MDHI would have terminated his employment based on the entirety of his wrongdoing had he still been employed when MDHI learned of it.  Instead, Plaintiff argues only that each separate category of misconduct does not, in isolation, suffice to warrant termination.  Plaintiff is wrong as a matter of fact and, more importantly, as a matter of law.  The after-acquired evidence doctrine applies where an employer establishes by a preponderance of the evidence that it would have terminated an employee on the basis of later-discovered misconduct.  *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996).  Like any employer, MDHI may properly base its employment decisions—including

termination—on the totality of the facts or individual ones.  Plaintiff's attempt to artificially isolate each category of his misconduct is not supported by logic or the law.[9]

More importantly, whether his conduct is viewed individually or in totality, Plaintiff's bare, self-serving opinion of the egregiousness of his misconduct cannot create a genuine dispute of fact as to <u>MDHI</u>'s view of those actions.  That MDHI would have terminated Plaintiff for his misconduct is supported by the declaration of MDHI's CEO, Lynn Tilton; MDHI's policies; Plaintiff's confidentiality agreement; and common sense.  *See* Mot. 18-24.  The Ninth Circuit has endorsed precisely this kind of evidence as sufficient on summary judgment.  *See O'Day*, 79 F.3d at 762 (affirming grant of summary judgment based on affidavit of employee familiar with termination decisions corroborated by company policy and "common sense").  Given *O'Day*, Plaintiff's attempt to imply there is something unusual or "of note" in MDHI relying on the declaration of its CEO to confirm the fact and application of MDHI's policies is unavailing.  *O'Day* likewise rejected Plaintiff's alternative argument:  that MDHI must show that it terminated other employees for similar transgressions.  *See id.*  At bottom, "[t]here is nothing inherently incredible," or even disputable, about the fact that Plaintiff would have been terminated for his racist remarks, his surreptitious efforts to acquire the company, his dissemination of MDHI's confidential information, his secret surveillance of his co-workers, or his leaks to reporters.  *Id.*

**Plaintiff's Racist Remarks.**  Plaintiff offers only his own opinion that his reference to an African-American as a "little black fucker" and pejorative comments about "the blacks in this country" were not egregious enough to warrant termination.  This is insufficient to create a genuine dispute of fact in light of Tilton's declaration, MDHI's explicit anti-discrimination policy (DX30), and common sense.[10]  *O'Day* forecloses Plaintiff's argument that MDHI must present

---

[9] Plaintiff generally asserts that he would not have been terminated because of his purported "hard-working nature and nearly unparalleled ability to sell MDHI helicopters."  Opp. 22.  But even productive employees are terminated for breaches of company policies and norms, such as making racist comments, secretly recording their colleagues, disseminating confidential information, or otherwise breaching their duties to the company.  And here, Plaintiff's self-serving characterizations are contradicted by the record.  DSOF ¶¶ 5-15.

[10] Plaintiff peppers his response to MDHI's Rule 56.1 Statement with spurious objections, including that the anti-discrimination policy (DX30), an obvious business record, is "hearsay without exception."  Pl.'s 56.1 Resp. ¶ 6.  MDHI does not detail the failings in Plaintiff's evidentiary objections here, but is ready to respond to any concern the Court may have.

1   evidence that it terminated the other individual(s) on his recording. 79 F.3d at 762. Plaintiff has

2   not identified the other individual(s), or established that they were MDHI employees.

3         **Plaintiff's Scheme to Purchase MDHI During His Employment.**  Plaintiff does not

4   dispute that during his MDHI employment, and thereafter, he endeavored to form an investor

5   group to acquire MDHI out from under Tilton. Pl.'s 56.1 Resp. ¶ 73. Nor does Plaintiff dispute

6   that Tilton would have terminated his employment had she known of this scheme. Tilton Decl.

7   ¶ 9(f). Plaintiff's arguments that (1) his plan is documented by only a subset of the emails he

8   produced in discovery, and (2) he had already complained about MDHI's pricing and Vergez

9   before attempting to line up investors, are irrelevant to whether Tilton would have terminated

10   him had she known of his breach of loyalty and conflict of interest. There is thus no genuine

11   dispute of fact on this issue.

12         **Plaintiff's Dissemination of MDHI's Confidential Information**.  Plaintiff does not

13   dispute that he disseminated MDHI's confidential financial information to a potential investor

14   he was courting, nor that he disclosed Tilton's detailed travel itinerary—while Tilton was

15   traveling—to a third-party investigator of some undefined sort. Pl.'s 56.1 Resp. ¶¶ 112-113.

16   Instead, Plaintiff argues essentially "no harm, no foul": since his actions did not result in "any

17   harmful impact on MDHI," they would not have "ensured his certain termination." Opp. 23.

18   Plaintiff's argument is pure fantasy, belied by Tilton's declaration, Plaintiff's confidentiality

19   agreement, and common sense. Indeed, that a company might terminate an employee for risking

20   the safety of a female co-worker traveling alone by sharing her itinerary with unknown third

21   parties is obvious; here, it was not a co-worker, but the CEO whose safety Plaintiff put at risk.

22         Plaintiff's alternative argument, that his transmission of MDHI's sensitive information to

23   third parties is "commonplace in the workforce" is defeated by his admitted purpose for those

24   transmissions:  Plaintiff hoped to "expose" MDHI and thereby further his scheme to acquire the

25   company. Pl.'s 56.1 Resp. ¶112; Opp. 23.

26         **Plaintiff's Surreptitious Recordings of MDHI Employees.**  Plaintiff's suggestion that

27   his recordings are protected by the FCA is defeated by the sheer volume of recordings having

28   nothing at all to do with his *qui tam* claims; indeed, Plaintiff admitted he generally attempted to

record <u>all</u> of his conversations at MDHI.  DX3 at 74:6-12.  Plaintiff's citation to *Van Asdale v. Intl. Game Tech.,* 2009 WL 4828708 (D. Nev. Dec. 8, 2009), is instructive.  Far from the four recordings found to be of insufficient severity in that case, *id.* at *10, here Plaintiff produced nearly <u>70</u> recordings and has admitted to keeping his colleagues under constant audio surveillance. DX123; DX3 at 74:6-12.

**Plaintiff's Leaks to Reporters.**  Plaintiff does not dispute that he repeatedly spoke to reporters about MDHI, nor that he provided them with MDHI's confidential information, which violated his confidentiality agreement and MDHI's Business Ethics and Practices Policy.  DSOF ¶ 113; Pl.'s 56.1 Resp. ¶ 113; DX68, DX29 at 3, 6.  Instead, Plaintiff tries to dispute only a single instance where he spoke to a Reuters reporter for a purported "big expose" on MDHI in an attempt to "end this thing."  But Plaintiff memorialized this conduct in a contemporaneous email to his co-relator, sent prior to his termination.  DX76; DX82.  His attempt to dispute his own admissions by reference to subsequent deposition testimony, Opp. 23, fails under Ninth Circuit precedent.  *See, e.g., Foster v. Metro. Life Ins. Co.*, 243 Fed. App'x 208, 210 (9th Cir. 2007) (holding, at summary judgment stage, a "court may disregard the party's sworn testimony if the testimony is internally inconsistent"); *Kennedy*, 90 F.3d at 1481 (affirming summary judgment where alleged dispute rested on testimony contradicted by record evidence).

Plaintiff's shifting story over the course of his deposition is precisely the kind of evidence the Ninth Circuit has held does not prevent summary judgment.  At his deposition, Plaintiff testified, in chronological order, that he did not recall speaking to Reuters (230:4-23); it "appears" that he spoke with Reuters (231:13-16); he did not recall what he meant by emailing his co-relator that he spoke to Reuters to do what he could to "end this thing" (244:18-23); he "may have talked to [Reuters] a little bit, but [he] didn't architect that story" (301:18-20); he spoke with Reuters but did not "think [he] gave them anything" (301:23-24); and he "believe[s]" he received a call from Reuters but "probably" only told the reporter that his co-relator may be willing to talk to him, but he "[does not] recall" (301:25-302:18).  *See* DX3; PX4 (Dkt. 487-1).  Particularly given his contemporaneous email—in which he described the Reuter's story as "[t]he first boulder in the avalanche that is going to smash Lynn Tilton," DX90—Plaintiff's subsequent testimony

attempting to escape his own words does not create a dispute even as to this particular leak.  Nor can it defeat summary judgment, given Plaintiff's failure to dispute his role in other leaks.

     **C.**     **Any Recovery Should Be Cut Off By December 31, 2014, and No Later Than March 9, 2015.**

     As MDHI explained in its motion, the after-acquired evidence doctrine applies to all recovery: it both cuts off back pay, and it precludes front pay or reinstatement.  Mot. 18-20.  The record demonstrates that any potential recovery by Plaintiff must be cut off as of December 31, 2014, when he violated his duty under Rule 26 to identify the thousands of pages of documents he stole and the hundreds of hours of surreptitious recordings he made that he claims reflect protected activity.  Mot. 19-20, 25-26.  In response, Plaintiff purports to take issue with *Yeary v. Florida Department of Corrections*, 1997 WL 284648, at *7 (M.D. Fla. May 13, 1997), which held that the after-acquired evidence doctrine terminates backpay as of the date a party withholds evidence of his misconduct because to do otherwise would be to "reward dishonesty in the discovery process."  But Plaintiff does not cite a single case to contradict this self-evident proposition.

     Moreover, while Plaintiff quibbles with the December 31, 2014 date, he presents no genuine dispute that any recovery would be barred as of March 9, 2015, when Plaintiff produced nearly 70 surreptitious recordings (including the one reflecting his racist and derogatory comments in further violation of MDHI's policies), as well as a USB drive containing MDHI's privileged and confidential information related to an arbitration with a competitor.  DSOF ¶ 122.  Plaintiff's March 9, 2015 discovery responses should also have included his communications with reporters and other non-governmental third parties—information that was requested by MDHI, but Plaintiff improperly withheld.  *See* DX123 at 24; DX125 at 3, 12.

     Based on the undisputed evidence and controlling caselaw, Plaintiff may not, as a matter of law, seek any recovery after December 31, 2014 or, at the latest, March 9, 2015.

**IV.**     **MDHI Is Entitled to Summary Judgment as to Liability on Counterclaims 1, 7, 8.**

     **A.**     **Plaintiff's Liability for Breach of Contract.**

     Plaintiff's Opposition fails to rebut MDHI's entitlement to summary judgment as to its breach of contract counterclaim.  Critically, Plaintiff does not dispute that he provided MDHI's

confidential information to non-governmental third parties, DSOF ¶¶ 112-114, a clear violation of his confidentiality agreement, DX68.   Plaintiff's bare assertion that he disputes the "significance" of his breaches can be argued to the jury in assessing damages, but it has no relevance to whether he, in fact, breached the agreement.

Plaintiff's *seriatim* arguments offered in defense are likewise baseless.   Plaintiff has not made the requisite "particularized showing" to establish a putative public policy exception, nor even argued that his disclosures to non-governmental third parties, including investors and reporters, were necessary to his *qui tam* claims.   *See Cafasso*, 637 F.3d at 1062; *see generally* Dkt. 478 at 11-15.   Nor was Plaintiff's liability for his pre-petition breaches of his confidentiality agreement discharged in his bankruptcy because MDHI could not have "fairly contemplated" claims based on Plaintiff's surreptitious misconduct.   *In re Jensen*, 995 F.2d 925, 929-31 (9th Cir. 1993); *see* Dkt. 478 at 21-24.   And Plaintiff's argument that MDHI has not been damaged by his theft of company materials is belied by his agreement that a breach of his confidentiality agreement would cause "immediate and irreparable damage to MDHI."   DX68.

To the contrary, as MDHI has made clear, Plaintiff's breaches of his confidentiality agreement have "substantially and irreparably damaged" MDHI by causing Plaintiff and third parties to have unauthorized possession of its confidential material, and MDHI is entitled to its return.   Dkt. 153 at 25, 31.   In response to Plaintiff's interrogatory requesting an "itemized list" of damages, MDHI identified its monetary damages and subsequently provided documentation for the amount of those damages.   MDHI cannot produce "underlying documents" for the irreparable damage it has incurred by being deprived of its ability to control its confidential information, but that injury is self-evident as its misappropriated material is still in Plaintiff's possession.   Plaintiff's claim that he "can no longer develop factual evidence in opposition" to MDHI's efforts to recover its material fails for the same reason. Plaintiff does not dispute that he has continued to retain it.   There is thus no factual evidence for him to discover.

Finally, Plaintiff's observation that MDHI has not moved for an injunction is irrelevant to whether MDHI has been damaged by Plaintiff's breach of contract.   MDHI has moved for summary judgment only on <u>liability</u>.   The <u>relief</u> that MDHI ultimately obtains is not relevant to

the determination of <u>whether</u> MDHI has been damaged and Plaintiff is therefore liable.[11] Likewise, Plaintiff's insinuation that MDHI must present evidence of "<u>monetarily</u> recoverable 'irreparable damages,'" Opp. 31 (emphasis added), has been rejected by the Arizona Court of Appeals in *Covid, Inc. v. Misencik*, 2014 WL 1056794, at *5 (Ariz. Ct. App. Mar. 18, 2014) (holding that employer was entitled to summary judgment on its breach of contract claim seeking the return of its documents where the employee's confidentiality agreement required him to return the employer's material upon termination).  There, the Court of Appeals held that the employer did not need to show monetary damages because it was entitled to specific performance of the return of its documents.  *Id.*[12]  As in *Covid*, Plaintiff's confidentiality agreement required him to return MDHI's material upon termination (DX68 ¶ 6), and thus a showing of monetary damages is not required and summary judgment is warranted.

### B.    Plaintiff's Liability for Misappropriation of Trade Secrets.

In its initial memorandum, MDHI identified four dashboards that Plaintiff misappropriated in 2014, months after his termination, and presented supporting evidence that these dashboards are MDHI trade secrets.  Mot. 31; DX36, DX46-DX50; Tilton Decl. ¶9(i).

In response, Plaintiff offers a number of factually and legally erroneous arguments—most notably, that the dashboards are not trade secrets because certain unidentified employees in certain departments could access them.  Pl.'s Decl. ¶ 9.  Plaintiff's declaration lacks any details or support (indeed, Plaintiff does not even establish his own foundation to offer such an assertion), and it ultimately fails to create a genuine dispute of fact as to whether MDHI maintained the

---

[11] Under Arizona law, even where monetary damages cannot be established in breach of contract cases, nominal damages are recoverable. *See, e.g., Phelps v. Gilbraith*, 2010 WL 4323667, at *3 (Ariz. Ct. App. Oct. 29, 2010); *Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.*, 2014 WL 4259485, at *3 (D. Ariz. Aug. 28, 2014) ("Even if Farm Bureau's alleged breach caused Jeffers no damages he would still be entitled to nominal damages.").

[12] Federal courts applying Arizona law have reached similar conclusions.  Mot. 28-30 (citing cases).  Plaintiff argues in a footnote that these cases are distinguishable because the agreements at issue also provided for attorney's fees.  Opp. 31 n.11.  This is incorrect.  In *Cafasso*, the court noted the irreparable harm provisions of the agreement and held that the employer was entitled to an injunction because the employee "deprived [the company] of its right under the Agreement to keep its confidential information confidential."  *Cafasso*, 2009 WL 1457036, at *13.  That the court <u>additionally</u> awarded attorney's fees pursuant to separate language in the agreement is inapposite.  MDHI will seek the fees and costs incurred to enforce Plaintiff's obligations under A.R.S. § 12-341.01 at the appropriate time.

confidentiality of its dashboards.  *See, e.g., F.T.C. v. Publ'g. Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Food Servs. of Am., Inc. v. Carrington*, 2013 WL 4507593, at *7 (D. Ariz. Aug. 23, 2013) ("[T]he owner of a trade secret does not relinquish its secret by disclosure to employees on a necessary basis or by limited publication for a restricted purpose." (internal quotation marks omitted)); *see generally* Dkt. 478 at 16-18 (explaining that dashboards are trade secrets, MDHI identified them with particularity, and the AUTSA does not require further disclosure or use); *id.* at 30-35 (explaining that MDHI has incurred costs to recover these trade secrets).  Thus, MDHI's motion for summary judgment as to Plaintiff's liability for misappropriation of its trade secrets should be granted.

### C.    Plaintiff's Liability for Tortious Interference.

MDHI has established Plaintiff's liability for tortious interference with Rupp's and Erickson's confidentiality agreements.  Mot. 31-32.  Plaintiff's opposition to summary judgment for tortious interference rests on a "public policy" argument that (1) is inapplicable here, *see Cafasso*, 637 F.3d at 1062, and (2) independently fails on its face, as Plaintiff has failed to demonstrate that he was a mere "conduit" for the documents he convinced Rupp and Erickson to steal for him, in breach of their confidentiality agreements.  Opp. 35.  To the contrary, his production of those documents in discovery demonstrates that he retained them for his own use.

## V.    Ruth Marsteller Does Not Have Independent Claims Against MDHI.

Plaintiff does not dispute that Mrs. Marsteller is not pursuing her own claims for damages.  MDHI agrees that Mrs. Marsteller is simply a nominal plaintiff for Plaintiff's affirmative claims.

## CONCLUSION

For the reasons set forth above and in its opening brief, MDHI's motion for summary judgment should be granted.

| 1 | DATED:   November 17, 2017 | Respectfully submitted, |

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

**WILLIAMS & CONNOLLY LLP**

By: s/ L. Eric Dowell
    L. Eric Dowell (AZ Bar No. 011458)

By: s/ Juli Ann Lund
    Christopher N. Manning (pro hac vice)
    Edward C. Reddington (pro hac vice)
    Juli Ann Lund (pro hac vice)
    Tracey A. Fung (pro hac vice)
    David M. Berman (pro hac vice)

2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:  (602) 778-3700
Facsimile:    (602) 778-3750
eric.dowell@ogletreedeakins.com

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile:   (202) 434-5029
cmanning@wc.com
ereddington@wc.com
jlund@wc.com
tfung@wc.com
dberman@wc.com

*Attorneys for Defendant MD Helicopters, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of November, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Ruth Brown
Heather Lewis Donnell
Michael Kanovitz
Frank Newell
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL  60607
ruth@loevy.com
heather@loevy.com
mike@loevy.com
frank@loevy.com

*Attorneys for Plaintiffs Ruth and Philip Marsteller*

s/ Juli Ann Lund _____