Christopher N. Manning (pro hac vice)
Edward C. Reddington (pro hac vice)
Juli Ann Lund (pro hac vice)
Tracey A. Fung (pro hac vice)
Melissa Collins (pro hac vice)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029
cmanning@wc.com
ereddington@wc.com
jlund@wc.com
tfung@wc.com
mcollins@wc.com

L. Eric Dowell (AZ Bar No. 011458)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone:    (602) 778-3700
Facsimile:    (602) 778-3750
eric.dowell@ogletreedeakins.com

*Attorneys for Defendant MD Helicopters, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Philip A. Marsteller and Ruth Marsteller, | Case No. CV-14-01788-PHX-DLR |
| Plaintiffs, | |
| v. | **RESPONSE OF DEFENDANT MD HELICOPTERS, INC. ("MD") TO PLAINTIFFS' MOTION *IN LIMINE* NO. 4 (CHARACTER EVIDENCE)** |
| MD Helicopters, Inc., | |
| Defendant. | |

Plaintiff Philip Marsteller's fourth motion *in limine* addresses a hodge-podge of evidence that he groups under the rubric of "bad character" evidence, including his extensive litigation history and the dire financial circumstances it created. Dkt. 565 ("Mot.") at 1. Such evidence is not character evidence, but instead shows Marsteller's motive for the conduct at issue in this action and is thus directly relevant to MD's defense to Marsteller's claims and MD's counterclaims. Evidence of Marsteller's financial circumstances, including statements he made in financial documents (some under the penalty of perjury), is also relevant to the jury's assessment of his credibility. Such evidence is admissible under the very authority Marsteller relies on in his motion. Accordingly, there is no basis to exclude it, and Marsteller's motion should be denied.

Marsteller's motion also seeks the exclusion of two vague categories of evidence he characterizes as "uncharged fraud" and "undisclosed witnesses or documents." *Id.* However, Marsteller fails to identify any specific evidence at issue as to either of these categories, and MD cannot respond in the abstract to assertions that are purely hypothetical. Here, too, the Court should deny Marsteller's motion.

**ARGUMENT**

**I.    Other Litigation/Financial Circumstances**

Marsteller argues that evidence of his litigation history is "irrelevant" and "inadmissible." Mot. at 1. As set forth in its Motion *in Limine* No. 1, Dkt. 556, MD agrees that evidence of unrelated litigation generally is irrelevant and inadmissible to prove character. But, as MD's first motion *in limine* explains, and Marsteller's cited authorities confirm, other litigation can be relevant for certain purposes. Here, Marsteller's August 2013 bankruptcy, the litigation involving his Brazilian business that led to that bankruptcy, and his current litigation concerning his breach of a 2014 loan guarantee fall within a well-established basis for admissibility: motive. Fed. R. Evid. 404(b)(2); *see also* Dkt. 556 at 1.

As Marsteller acknowledged in his deposition and disclosed in his bankruptcy filing, he had lost two lawsuits related to his former Brazilian business, resulting in judgments against him totaling $260,000 that were still outstanding as of his termination and the

bankruptcy petition he filed days later.  Dkt. 565-1 at 24:14-27:16 (judgment for $130,000); *id.* at 27:17-28:6 (second judgment for $130,000).  Marsteller also owed approximately $50,000 to various entities (including $35,000 owed to the IRS for unpaid withholding taxes) that were in collections during Marsteller's employment with MD and remained outstanding at the time of his bankruptcy petition.  *See* Ex. 1 (P. Marsteller Dep.) at 39:10-21; Ex. 2 at 4-7.  Indeed, the only reason Marsteller went to work for MD in the first place was because, he contends, the Brazilian government had seized the assets of his Brazilian business, forcing him to go back to work for someone else.  By Marsteller's own telling, the failure of his Brazilian business (and resulting judgments and asset seizures) forced him into a financial hole he could not escape, resulting in his declaring bankruptcy on August 28, 2013.  Ex. 3.  Marsteller's claimed losses were so significant that he reported over $360,000 in business losses for the 2011 tax year.  Ex. 2 at 9.  By the summer of 2013, Marsteller could no longer pay even for his car, leading to a default judgment being entered against him on June 14, 2013, with a writ of garnishment for 25% of his wages being served on MD in August.  Ex. 4 at 2-3, 7.  Although Marsteller's bankruptcy was intended to give him a "fresh start," Mot. at 3, he currently is involved in litigation seeking to hold him personally liable for nearly $800,000 in connection with a multi-year commercial lease guarantee that he signed in 2014, shortly after he initiated this litigation.  Ex. 5.

As controlling Ninth Circuit authority demonstrates, where an individual is "living beyond his means," unable to "pay for things he needed," or being "squeezed" by financial pressures, such evidence may properly be admitted as relating to motive under Rule 404.  *U.S. v. Mitchell*, 172 F.3d 1104, 1108 (9th Cir. 1999) (discussing precedent permitting admission of evidence that a party "owed 'substantial sums,'" was "short on funds," and was "having financial difficulty" under the motive provision of Rule 404).[1]  Here, the record

---

[1] Contrary to Marsteller's contention, Mot. at 2-3, *Mitchell* does not support his motion.  As the Ninth Circuit observed in *Mitchell*, "[n]o general proposition can properly resolve all cases"; instead, "it is necessary to consider the facts of the particular case" to determine whether a party's financial situation falls within the "motive" provision of Rule 404.  172 F.3d at 1108.  When a party is "not just poor," but "squeezed," as Marsteller clearly was, evidence of a financial motive is properly admitted.  *Id.* at 1108-09.

demonstrates the severe financial pressures facing Marsteller during the same period that he claims to have been engaging in protected activity—and during which, as MD explained on summary judgment, Marsteller concocted a scheme to try to solicit investors to help him acquire MD by, among other things, trying to drive down the value of MD through allegations of wrongdoing and leaks of confidential information. Marsteller then took on nearly a million dollars in additional financial liability around the same time that he filed this lawsuit—only a year after filing for bankruptcy—and he is now being sued for breach of that guarantee, an obligation that continues to increase substantially due to contractual and pre-judgment interest. Ex. 5. As a result, Marsteller's litigation history, the resulting judgments against him, his bankruptcy and asset seizures, his lease guarantee, and the current litigation involving his default on it are directly relevant to his motive in raising and continuing to pursue his spurious allegations against MD. This same evidence is also relevant to the jury's assessment of the credibility of Marsteller's contemporaneous allegations and his testimony at trial. *See* Fed. R. Evid. 607. Thus, this evidence is properly admitted at trial.[2]

## II.   "Uncharged Fraud"

Marsteller next argues that MD should not be permitted to raise questions about unspecified "uncharged fraud." Mot. at 3. However, Marsteller does not identify any particular "uncharged fraud" that he seeks to exclude. Instead, he alludes only vaguely to his "finances, bankruptcy, taxes, lease agreements, and veteran's benefits," Mot. at 3, without identifying any evidence that he contends represents "uncharged fraud."

As discussed above, Marsteller's finances, bankruptcy (citing hundreds of thousands

---

[2] Marsteller argues that information "regarding the lease for Mrs. Marsteller's Brazilian food restaurant, Carvalho [*sic*], the restaurant's taxes, or recent litigation related to outstanding lease payments" are not relevant because "Mr. Marsteller has agreed to only seek damages through March 9, 2015." Mot. at 3 (referencing Dkt. 563). As MD set forth in its response to Marsteller's Motion *in Limine* No. 2, regarding the after-acquired evidence defense, evidence that is independently relevant to an issue still in dispute remains admissible; Marsteller cannot foreclose MD from offering its defense to his retaliation claims by withdrawing a portion of his damages claim. Evidence of Marsteller's involvement with Carvalho's remains relevant as to his financial motives and his failure to mitigate his damages, as he admittedly abandoned his job hunt in order to work for free as, in his words, "slave labor" for his wife. Dkt. 565-2 at 16:1-2.

of dollars in court judgments, tax debts, and other claims), tax returns, and lease guarantee are all relevant insofar as they relate to his financial motivations and credibility. Marsteller's veteran's benefits are also relevant insofar as he has stated his intention to seek the value of employment benefits as damages in this case. For example, because Marsteller admits that he received free healthcare from the Veterans Administration, Ex. 1 (P. Marsteller Dep.) at 8:20-10:6, and he has produced no evidence of out-of-pocket costs for healthcare coverage or treatment, he cannot seek the value of healthcare benefits as damages in this action.

Absent the identification by Marsteller of any specific evidence or lines of questioning that he seeks to exclude as "uncharged fraud," MD cannot respond further, beyond noting that settled Ninth Circuit precedent clearly authorizes MD to cross-examine Marsteller on any subject that relates to his credibility. Rule 607 expressly permits any party to "attack the witness's credibility." Fed. R. Civ. 607. Such credibility challenges may be made through cross-examination and through extrinsic evidence. *U.S. v. Castillo*, 181 F.3d 1129, 1132 (9th Cir. 1999) ("[T]he concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence.").

Although Marsteller attempts to suggest otherwise, presumably by invoking Rule 608, the case he cites in support simply underscores the flaw in his evidentiary argument. Mot. at 4 (citing *Barber v. City of Chicago*, 725 F.3d 702, 708-709 (7th Cir. 2013)).[3] As *Barber* explains, "[i]mpeachment by contradiction differs from attacking a witness's character for veracity with specific instances of conduct and is not governed by Rule 608(b)." 725 F.3d at 708-09. Moreover, Rule 608(b), by its terms, applies only to the admission of extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). It does not prohibit cross-examination as to extrinsic events. *Id.* Under these evidentiary rules, and governing precedent, MD is entitled to challenge Marsteller's credibility by examining him as to "uncharged fraud,"

---

[3] Marsteller cites Rule 609, which relates to impeachment by evidence of a criminal conviction. But Marsteller relies on *Barber*, which discusses Rule 608. *See* 725 F.3d at 708. MD presumes that he meant to invoke Rule 608.

- 4 -

whether it relates specifically to his conduct in this action or to other instances of dishonesty.

### III. "Undisclosed Witnesses or Evidence"

As with "uncharged fraud," Marsteller fails to identify any specific "undisclosed witnesses or evidence" that he seeks to exclude, leaving MD unable to address the challenge substantively. MD has disclosed the witnesses and exhibits it expects to rely on affirmatively at trial, and, per the Court's local rules and procedures, MD reserves the right to use other exhibits for impeachment should it become necessary.

### IV. Racist Statements

Finally, Marsteller describes the racist statements that he unwittingly recorded himself making as "other bad character evidence." Mot. at 5. As MD has explained in its response to Marsteller's second motion *in limine*, however, these statements are directly relevant to, and admissible in support of, MD's after-acquired evidence defense. MD acknowledges that these particular statements are not relevant to any other issue in this action and agrees that they would be excluded given Marsteller's strategic decision not to seek damages after March 9, 2015. Mot. at 3 (referencing decision "to only seek damages through March 9, 2015" set out in Docket 563). If, however, Marsteller seeks to avoid the consequences of his decision to limit his damages in this manner, then these statements are plainly probative of MD's after-acquired evidence defense and, thus, properly admitted. Marsteller appears to agree, given his strategic decision to limit his damages claim.

### CONCLUSION

For the foregoing reasons, the Court should deny Marsteller's motion.

| | |
|---|---|
| DATED:   September 24, 2018 | Respectfully submitted, |
| **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.** | **WILLIAMS & CONNOLLY LLP** |
| By: <u>s/ L. Eric Dowell</u><br>L. Eric Dowell (AZ Bar No. 011458) | By: <u>s/ Christopher N. Manning</u><br>Christopher N. Manning (pro hac vice)<br>Edward C. Reddington (pro hac vice)<br>Juli Ann Lund (pro hac vice)<br>Tracey A. Fung (pro hac vice)<br>Melissa Collins (pro hac vice) |
| 2415 East Camelback Road, Suite 800<br>Phoenix, Arizona 85016<br>Telephone:  (602) 778-3700<br>Facsimile:    (602) 778-3750<br>Eric.dowell@ogletreedeakins.com | 725 Twelfth Street, N.W.<br>Washington, DC 20005<br>Telephone: (202) 434-5000<br>Facsimile:   (202) 434-5029<br>cmanning@wc.com<br>ereddington@wc.com<br>jlund@wc.com<br>tfung@wc.com<br>mcollins@wc.com |
| *Attorneys for Defendant MD Helicopters, Inc.* | |

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of September, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Ruth Brown
Heather Lewis Donnell
Michael Kanovitz
Frank Newell
Scott Rauscher
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL  60607
ruth@loevy.com
heather@loevy.com
mike@loevy.com
frank@loevy.com
scott@loevy.com

*Attorneys for Plaintiffs Ruth and Philip Marsteller*

      /s/ Susan Stimson